UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED
2016 FEB 12 PM 2 25
U.S. DISTRICT COURT
NEW HAVEN, CT.

Scott Sottile

    Plaintiff,

v.

THE NIELSEN COMPANY (US), LLC,
AND
Thad Taylor

    Defendants

JURY TRIAL DEMANDED

CIVIL NO.

3:16CV232(VAB)

FEBRUARY 12, 2016

## COMPLAINT

Plaintiff Scott Sottile for his complaint against Defendants The Nielsen Company (US), LLC and Thad Taylor, alleges as follows:

### I. Parties

1. Plaintiff Scott Sottile is a Connecticut resident at 176 Amity Road #167 in Woodbridge, CT 06525.

2. Defendant The Nielsen Company (US), LLC ("Nielsen") is a Delaware limited liability company with its principal office located at 770 Broadway, New York, New York 10003.

3. Upon information and belief, Defendant Thad Taylor ("Taylor") was an employee of Nielsen from 2010-2011, is currently a "Global Director' at Nielsen and was a "Sr. Global Sourcing Manager" at Nielsen during 2011. Taylor's address is at 5515 N East River Road, Chicago, IL 60631.

## II.   Jurisdiction and Venue

4.  The Court has subject matter jurisdiction over this controversy pursuant to 28 U.S.C. § 1332, because Plaintiff and Defendants are citizens of different states and the amount in controversy, exclusive of interest and costs, exceeds $75,000.

5.  Venue is proper in this Court pursuant to 28 U.S.C. § 1391(c) because Scott Sottile worked there when the contract was agreed to , when it was breached, does so now and because Nielsen transacts business within this District.

## III.   Facts

6.  During 2010 and 2011, Scott Sottile ("Sottile") was employed by Success Systems Inc.

7.  Upon information and belief, Success Systems is a Connecticut Corporation that was located at 45 Church Street, Stamford CT 06906 during 2010 and 2011.

8.  Upon information and belief, Thad Taylor was an employee of Nielsen from 2010-2011, is currently a "Global Director' at Nielsen and was a "Sr. Global Sourcing Manager" at Nielsen during 2011.

9.  Prior to October 2010, Success was a small vendor to Nielsen, collecting convenience store sales data and reselling it to Nielsen. In October of 2010 Success won a much larger contract with Nielsen ("The GSA") to collect convenience store sales data from a much larger number of stores.

10. Upon Information and Belief, Success defrauded Nielsen in a number of ways both before the GSA was awarded and after ("The Success Fraud"). In 2011 Nielsen sued Success on a number of Causes, including Fraud and Misrepresentation, in the United States District Court, Southern District of New York, *The Nielsen Company (US), LLC v. Success Systems, Inc., Case 1:11-cv-02939-BSJ-FM* ("The Success-Nielsen Lawsuit").

11. Upon Information and Belief, prior to the GSA, Success fraudulently induced Nielsen to enter into the GSA by, among other things: exaggerating the annual sales of Success by approximately 500%, exaggerating the number of convenience stores Success currently had as customers by approximately 400%, and fabricating convenience store sales data to fill in missing data. This fabrication of data allowed Success to appear that it was more capable than it actually was, encouraging Nielsen to select Success for the GSA.

12. After the GSA was awarded, Success continued to fabricate the missing sales data it was being paid to collect by Nielsen. Success was only paid if the sales data collected was complete, so, rather than realize less revenue, Success fabricated any missing data, against Nielsen's written and verbal instructions. The amount of convenience store sales data fabrication ranged between 4 and 20% during the period of the GSA.

13. Appalled by the ongoing fraud against Nielsen, Sottile attempted to inform Nielsen of the Success Fraud. Using several anonymous email accounts Sottile attempted to contact a responsible individual at Nielsen from December 2010 to February 2011, in order to serve as a Whistleblower and reveal the Success Fraud. Sottile first contacted Nielsen's legal department, but they were not willing to give assurances

that his identity would be protected if he gave details of the fraud. Sottile eventually contacted Thad Taylor ("Taylor"), who was Nielsen's contracting officer for the GSA, in February of 2011. Taylor and Sottile exchanged a number of emails during February of 2011 ("The Whistleblower Emails").

14. Sottile received assurances from Taylor before providing any information about The Success Fraud. The assurances included that Taylor would not "use any information I give you in ways that would reveal the source" and that "you will not reveal my identity". To this, Taylor replied "Sure"

15. Sottile made sure that Taylor understood the stakes for Sottile, that "it would be very difficult for me if my identity were revealed", but that Sottile was "trying to do the right thing". In this case "the right thing" was revealing that Success was defrauding Nielsen and exactly how it was doing so.

16. Only after receiving these assurances from Taylor, and receiving confirmation that Taylor understood the gravity of the situation for Sottile if his identity were revealed, did Sottile provide details on the Success Fraud.

17. Despite these assurances, Nielsen provided copies of The Whistleblower Emails to Success.

18. As a direct result of The Whistleblower Emails being provided to Success, Sottile's identity was revealed to Success and Sottile has been subject to various lawsuits by Success from 2011 to the present in Connecticut Superior Court (*SUCCESS SYSTEMS,INC. v. SOTTILE,SCOTT FST-CV-11-5013789-S*, and *SUCCESS SYSTEMS, INC. v. SOTTILE, SCOTT FST-CV-15-6025883-S*).

19. Sottile has suffered substantial damages as a result of Nielsen/Taylor providing The Whistleblower Emails to Success, directly against their explicit promises.

## FIRST CAUSE OF ACTION
### (Breach of Contract)

20. Plaintiff repeats and realleges each and every allegation in Paragraphs 1-19 with the same force and effect as if set forth herein.

21. There was a valid and enforceable contract between Sottile and Nielsen/Taylor. This contract was developed during an email conversation between Sottile and Taylor during February of 2011.

22. Nielsen/Taylor breached the Contract by providing The Whistelbower Emails to Success. This was in direct contravention to Nielsen's agreement not to reveal Sottile's identity, and not to use the information provided in any way that would reveal the source.

23. Nielsen/Taylor both entered into the contract with Sottile. Taylor communicated with Sottile both as a Nielsen official, the Contracting Officer responsible for the GSA, using Nielsen's email, with his signature being "Thad Taylor Global Strategic Sourcing The Nielsen Company" AND personally when he gave his personal word that he would protect Sottile's identity.

24. The misconduct of the Defendant, as detailed in this Complaint, has unjustly enriched Defendant in an amount to be determined at trial.

## SECOND CAUSE OF ACTION
### (Fraud and Misrepresentation)

25. Plaintiff repeats and realleges each and every allegation in Paragraphs 1-19 with the same force and effect as if set forth herein.

26. On February 16, 2011, Nielsen/Taylor agreed with Sottile that "you will not reveal my identity and will not use any information I give you in ways that would reveal the source".

27. Such representations were material and known by Nielsen/Taylor to be false and/or misleading.

28. The false representations were made to induce Sottile to provide Nielsen/Taylor with information about an ongoing fraud against Nielsen even though Nielsen/Taylor had no intention of protecting Sottile's identity.

29. Sottile reasonably relied on the foregoing assurances and representations of Nielsen/Taylor when he provided details of the The Success Fraud to Nielsen/Taylor.

30. Nielsen/Taylor did not follow through on their representations, providing copies of the emails to Success, which directly resulted in two lawsuits against Sottile by Success.

31. Nielsen/Taylor directly benefited from the information provided about The Success Fraud.

32. Nielsen/Taylor both made the misrepresentations to Sottile. Taylor communicated with Sottile both as a Nielsen official, the Contracting Officer responsible for the GSA, using Nielsen's email, with his signature being "Thad Taylor Global Strategic Sourcing The Nielsen Company" AND personally when he gave his personal word that he would protect Sottile's identity.

33. As a direct and proximate result of Nielsen/Taylor fraud and misrepresentation, Sottile has suffered damages in an amount to be determined.

## CONCLUSION

WHEREFORE, Scott Sottile prays for judgment in his favor as follows:

A. A judgment in favor of Scott Sottile awarding him compensatory damages;

B. An award of prejudgment interest to the extent of Sottile's entitlement thereto under applicable law;

C. An award of punitive damages and/or attorney's fees and costs to the extent of Sottile's entitlement thereto under applicable law;

D. Such other and further relief the Court deems appropriate.

By: _____

Scott Sottile, Pro Se

176 Amity Road #167
Woodbridge, CT 06525
Tel. No: (203) 906-9299
E-mail: scott.sottile@gmail.com

# EXHIBIT 1



# Contract Question

**Fraud Lies** <fraudandliesatsuccess@gmail.com>         Wed, Feb 16, 2011 at 9:06 AM
To: thad.taylor@nielsen.com, Christopher.Leclair@nielsen.com

I have some information you need to know about Success Systems but I need some assurances from you first

---

**Taylor, Thad** <Thad.Taylor@nielsen.com>         Wed, Feb 16, 2011 at 11:16 AM
To: fraudandliesatsuccess@gmail.com, "LeClair, Chris" <Christopher.Leclair@nielsen.com>

> This is not how Nielsen does business. If you have something of relevant business to discuss or inform, please feel free to call my cell phone.
> Thad Taylor
> Global Strategic Sourcing
> The Nielsen Company
> 312-583-5124
> 312-316-1133 Cell
>
>
> **From:** Fraud Lies [mailto:fraudandliesatsuccess@gmail.com]
> **Sent:** Wednesday, February 16, 2011 09:06 AM
> **To:** Taylor, Thad; LeClair, Chris
> **Subject:** Contract Question
>
> [Quoted text hidden]

---

**Fraud Lies** <fraudandliesatsuccess@gmail.com>         Wed, Feb 16, 2011 at 11:21 AM
To: "Taylor, Thad" <Thad.Taylor@nielsen.com>

Not sure what you mean, I would like to tell you some things but have to establish the ground rules first-
[Quoted text hidden]

---

**Taylor, Thad** <Thad.Taylor@nielsen.com>         Wed, Feb 16, 2011 at 11:23 AM
To: fraudandliesatsuccess@gmail.com

> they are?
> Thad Taylor
> Global Strategic Sourcing
> The Nielsen Company
> 312-583-5124
> 312-316-1133 Cell
>
>
> **From:** Fraud Lies [mailto:fraudandliesatsuccess@gmail.com]
> **Sent:** Wednesday, February 16, 2011 11:21 AM
> **To:** Taylor, Thad
> **Subject:** Re: Contract Question
>
> [Quoted text hidden]

**Fraud Lies** <fraudandliesatsuccess@gmail.com>                    Wed, Feb 16, 2011 at 11:31 AM
To: "Taylor, Thad" <Thad.Taylor@nielsen.com>

my primary concern is protecting my identity- I am trying to do the right thing, but it would be very difficult for me if my identity were revealed
[Quoted text hidden]

---

**Taylor, Thad** <Thad.Taylor@nielsen.com>                          Wed, Feb 16, 2011 at 11:42 AM
To: fraudandliesatsuccess@gmail.com

Ok
Thad Taylor
Global Strategic Sourcing
The Nielsen Company
312-583-5124
312-316-1133 Cell

**From:** Fraud Lies [mailto:fraudandliesatsuccess@gmail.com]
**Sent:** Wednesday, February 16, 2011 11:31 AM
[Quoted text hidden]

[Quoted text hidden]

---

**Fraud Lies** <fraudandliesatsuccess@gmail.com>                    Wed, Feb 16, 2011 at 11:48 AM
To: "Taylor, Thad" <Thad.Taylor@nielsen.com>

Not sure what OK means- does it mean I have your personal word that you will not reveal my identity and will not use any information I give you in ways that would reveal the source?
[Quoted text hidden]

---

**Taylor, Thad** <Thad.Taylor@nielsen.com>                          Wed, Feb 16, 2011 at 12:05 PM
To: fraudandliesatsuccess@gmail.com

Sure.
Thad Taylor
Global Strategic Sourcing
The Nielsen Company
312-583-5124
312-316-1133 Cell

**From:** Fraud Lies [mailto:fraudandliesatsuccess@gmail.com]
**Sent:** Wednesday, February 16, 2011 11:48 AM
[Quoted text hidden]

[Quoted text hidden]

---

**Fraud Lies** <fraudandliesatsuccess@gmail.com>                    Wed, Feb 16, 2011 at 12:27 PM
To: "Taylor, Thad" <Thad.Taylor@nielsen.com>

ok, you don't really need to know who I am in any event, but it's likely that you'll learn my identity since I'm the only likely source of information.

I'm willing to trust you, Thad, but please understand the equation for me: I do the right thing, and, if you wind up inadvertently revealing who I am, I get fired, and likely lose my house and what not, given the amount of time it will take me to find another job - or I can say nothing and have no risk at all.

I don't want a reward, just that you understand the downside for me.
[Quoted text hidden]

---

**Taylor, Thad** <Thad.Taylor@nielsen.com>                              Wed, Feb 16, 2011 at 12:29 PM
To: fraudandliesatsuccess@gmail.com

Got it.
Thad Taylor
Global Strategic Sourcing
The Nielsen Company
312-583-5124
312-316-1133 Cell

**From:** Fraud Lies [mailto:fraudandliesatsuccess@gmail.com]
**Sent:** Wednesday, February 16, 2011 12:27 PM
[Quoted text hidden]

[Quoted text hidden]

---

**Fraud Lies** <fraudandliesatsuccess@gmail.com>                        Wed, Feb 16, 2011 at 1:26 PM
To: "Taylor, Thad" <Thad.Taylor@nielsen.com>

no idea where to start, much , much to cover, here's the first thing:

Success send you two data transmissions every Wednesday

Every week Success sends sales for every store for every day- it's perfect data - never any missing or questionable looking data

it's perfect data because every week Scott Tarlow forces us to fabricate the missing data so it looks perfect to you- we have programs written just to fabricate data- internal web pages whose only purpose is the fabrication of data-not just for you but for IRI as well-

Success just completed the ePB sourced data for the morning transmission - Success was missing 9% of the data - so Success fabricated the missing 9% so it looks perfect to you

This is easily verifiable and has been happening every week since Success started bidding on your contract- prior to that our data was full of holes and problems- then - magically- it became perfect- because Scott Tarlow wanted to use it as an example of what we would do
[Quoted text hidden]

---

**Taylor, Thad** <Thad.Taylor@nielsen.com>                              Wed, Feb 16, 2011 at 2:36 PM
To: fraudandliesatsuccess@gmail.com

Understood.
Thad Taylor
Global Strategic Sourcing
The Nielsen Company

312-583-5124
312-316-1133 Cell

**From:** Fraud Lies [mailto:fraudandliesatsuccess@gmail.com]
**Sent:** Wednesday, February 16, 2011 12:27 PM
[Quoted text hidden]

[Quoted text hidden]

---

**Taylor, Thad** <Thad.Taylor@nielsen.com>                       Wed, Feb 16, 2011 at 2:39 PM
To: fraudandliesatsuccess@gmail.com

Is scott hard focused and spending $ / resources on recruiting and converting stores?
Thad Taylor
Global Strategic Sourcing
The Nielsen Company
312-583-5124
312-316-1133 Cell

**From:** Fraud Lies [mailto:fraudandliesatsuccess@gmail.com]
**Sent:** Wednesday, February 16, 2011 01:26 PM
[Quoted text hidden]

[Quoted text hidden]

---

**Fraud Lies** <fraudandliesatsuccess@gmail.com>                 Wed, Feb 16, 2011 at 3:35 PM
To: "Taylor, Thad" <Thad.Taylor@nielsen.com>

You should assume unless you can externally verify it that anything Scott Tarlow says that casts the project in a project or Success in a favorable light is a lie

that sounds like a strong statement, here are a few examples you may find illuminating:

Last week you spoke to ST and he said that Success had spent a million dollars on labor, right? A lie- depending on how you attribute funds the right figure is less than $200k. Total project spending to date is less than 400k.

When Success went to Chicago to meet with you on the lack of progress, Success had spent less than $30k on project expenses

When Success went to Chicago one of the most common phrases ST used was 'I'll put 5 people on that' - At the time Success only had 5 employees. ST found it very funny - said that he never said they were 'discrete people' and therefore wasn't even lying

When the project was starting do you remember that that Success had to have the $1M immediately because we had spent so much of Success money already? a lie- we had not spent a single dollar except on selling you

As soon as your money hit, ST cut himself a check for 250k, bought Mindy a new 70k car, paid our back rent of 40k, and made payroll ( we had no meaningful cash when your wire hit) - and then, over the following month- spent a total of 30k on the project. In case they never told you, ST and Mindy are married and own Success.

Scott has earmarked 250k of the remaining funds as 'Nielsen Defense Funds' to be used to be used to pay for Success' legal defense when you sue Success

One of his favorite phrases to refer to you & Chris is:

'Neither one of them has enough medals on his chest to take a million dollar bullet'

meaning of course that once he had the first million you would be stuck and would put up with whatever Success did or didn't do since otherwise you'd have to own up to giving $1M to someone who was not going to perform and was never going to voluntarily return the money

Prior to getting the contract his favorite phrase was:
'The project can't succeed- but are we going to let someone else take Nielsen's money and fail?'

got to go- got data to fabricate
[Quoted text hidden]

---

**Fraud Lies** <fraudandliesatsuccess@gmail.com>                                    Thu, Feb 17, 2011 at 12:37 PM
To: "Taylor, Thad" <Thad.Taylor@nielsen.com>

Success had to fabricate 9+% of the data for the evening transmission to you.

The ACV data you collect on each store also can't be counted on. Mindy (sadly, with my help) fabricates the sales and other data because 'it's too much trouble' to get it directly from the retailer's

Outside the weekly fabrication of data, the thing I am most ashamed of was when we told you we had 1700 stores - do you remember this? One of the reasons ( I was told by ST) you chose us was because we had 1700 stores as customers , 299 of which were acceptable to your survey people. This meant that your existing survey stores we could convert plus our stores we would likely complete the vast majority of the 1222 store requirement.

A little problem- the 1700 stores are a fantasy- Success had around 400 customers at the time we sent you the list of 1700 from which you could choose stores that matched your survey. Would Nielsen have even signed the contract w/o this fraudulent information?

Sadly, I'm the one who had to make up the list of 1700 stores -

I also participated in the 'The Project has changed, we need more money and time' scam. I was involved in every discussion at Success , lead many of them - and we always expected what we got- a bunch of stores to start scanning and difficulty doing so- ST's 'this is not what we signed up for' is just wrong
[Quoted text hidden]